IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

AMERICAN MAJESTIC                    )
CONSTRUCTION, LLC,                   )
                                     )
    Plaintiff,                       )
                                     )    1:19-cv-264 (LMB/IDD)
    v.                               )
                                     )
CHRISTOPHER D. JUNIOR, <u>et al.</u>,    )
                                     )
    Defendants.                      )

<u>MEMORANDUM OPINION</u>

Defendants Christopher D. Junior ("Chris Junior"), Paul Junior, and Paul Bao Nguyen

("Paul Nguyen") (collectively, "defendants") have filed a Motion for Attorney Fees [Dkt. No.

62] in which they seek attorneys' fees under the Lanham Act, 15 U.S.C. § 1117(a), and Federal

Rule of Civil Procedure 56(h). For the reasons that follow, this motion will be denied.

I.    BACKGROUND

In this civil action, American Majestic Construction, LLC ("plaintiff" or "AMC") sued

defendants for conspiring to falsely present themselves to the public as partners or members of

AMC to procure construction contracts for their own benefit. The complaint included three

counts: false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)

(Count I) (against defendants Chris and Paul Junior); common law unfair competition (Count II)

(against defendants Chris and Paul Junior); and statutory business conspiracy in violation of Va.

Code § 18.2-499 and § 18.2-500 (against all defendants).

The complaint alleged that Chris Junior forged an AMC lien waiver to make it appear

that roofing work on a property previously owned by his father Paul Junior (the "Parish Lane

property") had been done by AMC, when in fact, Chris Junior and/or his father had done the

work themselves. In his deposition, Chris Junior admitted to forging the signature of Walther Morales,[1] a worker who sometimes assisted AMC with its construction projects, on an AMC lien waiver for this property. Paul Nguyen was the real estate agent for the sale of the property.

The complaint further alleged that in November 2017, the Parish Lane property's roof began to leak, ultimately collapsing and injuring one of the buyers. Believing that AMC had done the roofing work, the buyers contacted AMC to complain that the work was substandard. AMC alleged that this contact led it to discover Chris Junior's unauthorized use of one of its lien waivers. Although the complaint did not list any other specific examples of misconduct by the defendants, it alleged that "[t]he Juniors have repeatedly used the mark 'American Majestic Construction' without license, consent, or approval by AMC." [Dkt. No. 1] ¶ 76.

Defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), which was denied. After discovery was completed, defendants filed a motion for summary judgment, arguing in part that AMC's claims were time-barred because AMC had been aware of Chris Junior using its lien waivers since September 18, 2016. Defendants based that argument on evidence that on that date Chris Junior sent a text message to Raymond Rahbar ("Rahbar"), who along with his father owned AMC, which stated, "FYI used an AM [sic] lien waiver to satisfy payment for Walter [Morales's] work on my dad's house." [Dkt. No. 44] at 12. Defendants argued that this text message put AMC on notice of defendants' use of its mark,[2] and that because AMC did not file its complaint until March 2019, it failed to satisfy the applicable two-

---

[1] Although the parties have sometimes spelled Morales's first name "Walter," he informed the Court during his testimony that his first name is spelled "Walther."

[2] Defendants also argued that Rahbar approved Chris Junior's use of the AMC mark, but the text messages provided at the summary judgment stage did not specifically support this conclusion.

year statute of limitations.[3] The Court stated in open court that although the claim arising out of

the September 2016 incident was otherwise "good" and solid," summary judgment had to be

granted in defendants' favor because any claim arising out of that incident was time-barred and

there was no evidence that defendants used AMC's mark within the statute of limitations period.

[Dkt. No. 74] at 6:13-19. Although summary judgment was granted in defendants' favor, the

Court also warned defendants' counsel that "[t]here's a certain smokiness about this case and the

conduct of your clients, so they ought to be on clear notice from this litigation and from the

Court's observation of the record as I see it right now that they'd better avoid any connection

with American Majestic." Id. at 7:19-23.

Defendants made a variety of other arguments in support of their motion for summary

judgment, none of which formed the basis for the Court's judgment. For example, in support of

their motion, defendants produced a declaration signed by Morales stating that he had "never

been told by Paul Junior, Chris Junior, or Paul Nguyen," or heard those individuals tell another

person, that "any work [he] was performing for them or referred by them was on behalf of

AMC." [Dkt. No. 44-1] ¶¶ 8, 9. Despite having been submitted on behalf of defendants, the

declaration confirmed certain of plaintiff's arguments. For example, the declaration stated that

Morales learned at some point in 2017 that his name had been signed on an AMC lien waiver

and invoice in September 2016 without his knowledge, id. ¶ 11; however, the declaration also

stated that "[e]xcept for that occasion, . . . [he was] not aware of, nor [had he] seen Paul Junior,

---

[3] Although the Lanham Act does not include an express statute of limitations, the Fourth Circuit has held that "it is proper to use the analogous state limitations period for Lanham Act suits." PBM Prod., LLC v. Mead Johnson & Co., 639 F.3d 111, 121 (4th Cir. 2011). The parties agreed that "[i]n Virginia, the analogous state limitations period is two years." Id. (citing Va. Code § 8.01-243(A)).

Chris Junior, or Paul Nguyen utilize any document using or bearing the AMC name or logo." Id. ¶ 12.

In response, AMC filed another affidavit signed by Morales, stating that "English is not [his] first language and [he is] not fluent in English," he only "signed the [first] affidavit . . . because Chris Junior told [him] it would help [him] avoid trouble," he was "aware that Chris Junior tells people that his own construction projects are actually the work of American Majestic Construction," he "recently became aware that Chris Junior has been forgoing [sic] [his] signature on American Majestic Construction documents," and he "would not have signed the affidavit Chris Junior gave [him] if [he] knew the real facts." [Dkt. No. 51-6] ¶¶ 3, 5, 8, 13, 17. Because the summary judgment motion was resolved on statute of limitations grounds, these documents and the other arguments raised by defendants were not dispositive.

On September 23, 2019, AMC filed a motion for reconsideration under Federal Rule of Civil Procedure 59, in which it argued, for the first time, that Rahbar never received the September 2016 text message, and therefore the statute of limitations could not have been triggered at that time. As part of its motion for reconsideration, AMC submitted excerpts from Rahbar's deposition, which had not been submitted during the summary judgment briefing. In that deposition, Rahbar stated that he had no recollection of having received the September 2016 text message and explained that he was travelling internationally at the time the message was sent, meaning that it likely never reached him. AMC emphasized that the sole evidence in the record was that the text message had been sent, not that it had been received. The motion for reconsideration was denied because AMC failed to establish that there had been an intervening change in controlling law, new evidence not available during the summary judgment stage, or a clear error of law or a manifest injustice, as required to warrant reconsideration under Rule 59(e).

See Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir.1998). "Rule 59(e) motions may not be used . . . to raise arguments which could have been raised prior to the issuance of the judgment." Id.

The day before the hearing on AMC's motion for reconsideration, defendants filed the instant motion seeking $49,012.50 in attorneys' fees under 15 U.S.C. § 1117(a), which provides that a court may award attorneys' fees to the prevailing party in exceptional Lanham Act cases. Defendants argue that this case was exceptional because it "(i) . . . was about retribution and not protecting AMC's trademark rights; (ii) Plaintiff's claims [we]re either frivolous or objectively unreasonable; (iii) Plaintiff litigated the case in an unreasonable manner; and (iv) Defendants were victimized by this lawsuit and an attorney fee award advances considerations of compensation and deterrence." [Dkt. No. 63] at 7. Specifically, defendants contend that Rahbar brought this lawsuit in plaintiff's name, not because plaintiff had a meritorious claim, but rather to exact revenge on Chris Junior for voting to have Rahbar removed as Chief Executive Officer (CEO) of a company called MakeOffices,[4] for which Chris Junior served as an owner and board member. Defendants also argued that plaintiff litigated the case unreasonably by continuing to assert that there were violations after September 2016 without having any supporting evidence, and by refusing to produce a March 2018 settlement agreement between Rahbar, AMC, and MakeOffices that defendants asserted released them from the claims raised in this litigation.

---

[4] MakeOffices is a "real estate company providing shared office solutions for businesses in the greater Washington DC area, Philadelphia and Chicago," for which Rahbar was a co-founder in 2012. [Dkt. No. 63-14] ¶¶ 4, 5. Chris Junior was an early investor in the company and later become an owner and board member. Id. ¶ 6. At some point in 2016 or 2017, complaints were filed in the Fairfax County Circuit Court against Rahbar and others alleging misappropriation of MakeOffices funds among other claims. Id. ¶¶ 7, 8. In early April 2017, Chris Junior voted to remove Rahbar as CEO of MakeOffices. Id. ¶ 9. In March 2018, Rahbar, AMC, and MakeOffices, among other parties, entered into a global settlement agreement which resolved all of these actions, one of which had been removed to this court. [Dkt. No. 44-4].

Although defendants concede that attorneys' fees would not ordinarily be available for the non-Lanham act counts in the complaint, they argue that because all counts were "essentially the same" and "required the same efforts and defense and were dismissed uniformly together," attorneys' fees should be awarded as to all claims. Id. at 7.

Defendants also seek attorneys' fees under Rule 56(h), which provides that courts may award limited attorneys' fees "[i]f satisfied that an affidavit or declaration . . . is submitted in bad faith or solely for delay." Defendants argue that the Morales affidavit submitted by AMC satisfies this requirement. In support of their motion, defendants submitted a recording of a telephone call between Chris Junior and Morales, which they claim proves that Chris Junior did not pressure Morales into signing the first declaration and that Morales is fluent in English, contrary to the assertions in the affidavit Morales signed for the plaintiff.

Because Morales's affidavit and declaration were central to defendants' motion for attorneys' fees under Rule 56(h), the Court ordered Morales to appear to testify at a hearing, during which Morales was placed under oath and answered a series of the Court's questions, after which both sides were given an opportunity to question him. Morales testified that he had a ninth-grade education, which he completed in his home country, and that he had been in the United States for 15 years. With respect to his ability to speak and understand English, Morales stated that English was not his first language and that he did not believe he was fluent. [Dkt. No. 77] at 13:21-14:1. He further stated that "when it's about work, I understand a lot, but, I mean, when it's something, for example, right now, I would like to have an interpreter to better understanding." The Court asked him if he was having trouble understanding the questions he was being asked, and Morales replied that he understood, but that he would notify the Court if he did not understand a question. Id. at 4:22-5:9.

The Court then addressed the declaration and affidavit Morales had signed. He stated that he did not write either document himself. With respect to the declaration submitted on behalf of defendants, Morales testified that he "[n]ever" felt pressured to sign the document and believed that everything in the declaration was true. Id. at 8:7-24. He confirmed that he had "never heard either Paul Junior, Chris Junior, or Paul Nguyen tell anybody else that [his] work was being done on behalf of AMC." Id. at 9:16-25. Despite these statements in support of defendants' position, Morales also confirmed that Chris or Paul Junior had signed his name on an AMC document related to the Parish Lane property. Specifically, Morales stated that about a year after that incident, he received a call from the buyer of that property "asking for a warranty because he found in the . . . documentation that [Morales] was doing that job for American Majestic, but it wasn't true. So [Morales] didn't even know what to respond to these people because [he] -- by then, [he] didn't know that those documentation were signed with [his] name." Id. at 12:6-20.

With respect to the affidavit presented by plaintiff, Morales stated that Rahbar asked him in a "normal" and "friendly" tone if he would sign it, because otherwise he would be "on [Chris or Paul Junior's] side." Id. at 11:16-21. Morales further stated that although Chris Junior never told him that signing the first declaration would help him avoid trouble, his reason for signing it was that he was "trying to be away from this problem." Id. at 14:6-24. Morales also testified that the only forgery incident he knew about was Chris Junior's signing the AMC lien waiver in September 2016, but that Rahbar "said [Chris Junior] has been signing several papers with [Morales's] name," which made him "think [those allegations] might be true." Id. at 15:6-9.

## II.   DISCUSSION

### A. Standard of Review

#### 1. Attorneys' fees under the Lanham Act

Under the American Rule, each party pays its own litigation costs regardless of the outcome of a civil action; however, Congress may displace this default rule by statute, and did so in passing the Lanham Act. Under 15 U.S.C. § 1117(a), "[t]he court in exceptional [Lanham Act] cases may award reasonable attorney fees to the prevailing party." Although attorneys' fees under the Lanham Act are typically awarded to prevailing plaintiffs, prevailing defendants may also be entitled to attorneys' fees in exceptional cases. Verisign, Inc. v. XYZ.COM LLC, 891 F.3d 481, 488 (4th Cir. 2018). To obtain attorneys' fees, a prevailing party must prove by a preponderance of the evidence that the case was "exceptional." Express Homebuyers USA, LLC v. WBH Mktg., Inc., 343 F. Supp. 3d 562 (E.D. Va. 2018). In deciding whether the prevailing party has met its burden, the court must consider "the totality of the circumstances." Verisign, 891 F. 3d at 483 (internal quotation marks omitted). "Ultimately, the decision whether or not to find a case 'exceptional' . . . is within the discretion of the district court." Express Homebuyers, 343 F. Supp. 3d at 566.

A court may find a case "exceptional" when it determines, in light of the totality of the circumstances, that "(1) there is an unusual discrepancy in the merits of the positions taken by the parties, based on the non-prevailing party's position as either frivolous or objectively unreasonable; (2) the non-prevailing party has litigated the case in an unreasonable manner; or (3) there is otherwise the need in particular circumstances to advance considerations of compensation and deterrence." Georgia-Pacific Consumer Prod. LP v. von Drehle Corp., 781 F.3d 710, 721 (4th Cir. 2015), as amended (Apr. 15, 2015) (internal citations omitted). "[T]he losing party's conduct need not have been independently sanctionable or taken in bad faith in order to merit award of attorney fees." Verisign, Inc., 891 F.3d at 487. Instead, "a case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself

apart from mine-run cases to warrant a fee award," id. at 487 (emphasis in original) (internal citations omitted); however, "it is the 'rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees.'" De Simone v. VSL Pharm., Inc., No. 15-cv-1356, 2019 WL 2569574, at *5 (D. Md. June 20, 2019) (quoting Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 555 (2014)).

### 2. Attorneys' fees under Rule 56(h)

Federal Rule of Civil Procedure 56(h) provides: "If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court — after notice and a reasonable time to respond — may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions." "Whether to award sanctions under Rule 56(h) . . . is within the district court's sound discretion." La Michoacana Nat., LLC v. Maestre, No. 3:17-cv-727, 2020 WL 1233652, at *7 (W.D.N.C. Mar. 12, 2020).

### B. Analysis

#### 1. Attorneys' fees under the Lanham Act

##### a. The merits of the plaintiff's positions

None of the three Georgia-Pacific factors supports a finding that this was an exceptional case warranting an award of attorneys' fees to the defendants. As to the first factor, plaintiff's claims were not frivolous or objectively unreasonable. For example, all of plaintiff's claims survived defendants' motion to dismiss, demonstrating that plaintiff's complaint alleged plausible claims for relief. Although the Court concluded at the summary judgment stage that

plaintiff's claims were time-barred, plaintiff's arguments against summary judgment were not frivolous or objectively unreasonable, nor was there a particularly unusual discrepancy in the merits of the positions taken by the parties.[5] During his deposition, Chris Junior admitted to using a lien waiver bearing AMC's name and forging the signature of an AMC-affiliated individual, Morales, on that lien waiver in September 2016. See [Dkt. No. 51-7] at 170:16-22 ("Q. Have you ever forged any AMC lien waivers? A. The one that was submitted for the Parish Lane one. Q. That's the only one you forged? A. . . . . I did write in Walter Morales' name, yes."). Had this claim not been time-barred, it would have been colorable under the Lanham Act. Indeed, during the summary judgment argument, the Court referred to that claim as "good" and "solid," [Dkt. No. 74] at 6:13-14, and also expressed concern about defendants' conduct, remarking that "[t]here's a certain smokiness about this case and the conduct of [defendants]," id. at 7:19-23.

Moreover, although AMC's arguments that its claims were not time-barred did not prevail, those arguments were not frivolous. Had plaintiff argued during the summary judgment proceeding that Rahbar did not receive the September 2016 text message, rather than making that

---

[5] Defendants made a variety of other arguments in their summary judgment briefing, including that plaintiff released defendants from all claims as part of the previously mentioned global settlement of unrelated litigation; that plaintiff failed to establish damages and that defendants were AMC's commercial competitors; and that there was no evidence linking Paul Nguyen to any wrongdoing. In their motion for attorneys' fees, defendants argue that plaintiff's responses to some of these arguments were objectively unreasonable. Because the Court did not rely on these arguments in granting summary judgment, they were not the basis for defendants being the prevailing party, and need not be addressed in detail. Moreover, plaintiff's responses to defendants' arguments were not objectively unreasonable or frivolous. For example, plaintiff appropriately argued that defendants were misinterpreting the applicable case law with respect to whether a Lanham Act defendant must be a commercial competitor of the plaintiff. In addition, although the evidence linking Nguyen to any wrongdoing was de minimis, Nguyen was not included in the Lanham Act count of the complaint, and accordingly he is not eligible to recover any attorneys' fees.

argument in its motion for reconsideration, the Court might have concluded that there was a genuine dispute as to whether the statute of limitations had been triggered in September 2016 and allowed the case to go to trial.

In addition, although plaintiff was ultimately unable to uncover evidence of any additional violations by defendants, it was not unreasonable for plaintiff to believe that such evidence could be obtained through further discovery, given the clear evidence that Chris Junior forged an AMC lien waiver at least once before. Accordingly, on the sole ground on which defendants prevailed on summary judgment, plaintiff's positions were not so unreasonable or frivolous as to be exceptional.

b.  The plaintiff's litigation approach

Defendants also argue that plaintiff needlessly drove up litigation costs by claiming that defendants were engaging in ongoing violations without any proof, failing to promptly produce a document in discovery, and filing the second Morales affidavit. Although plaintiff's litigation approach was less than optimally efficient, its approach was not so unreasonable as to render it exceptional. For example, defendants argue that plaintiff needlessly increased litigation costs by making meritless objections to the production of a global settlement agreement from three unrelated cases, which defendants assert released them from all of plaintiff's claims; however, plaintiff had a colorable argument that this agreement did not apply to the claims in this action, pointing out that none of the defendants were listed by name in the settlement agreement. Although the agreement generally released current and former employees, agents, and representatives of MakeOffices from claims brought by Rahbar, plaintiff plausibly argued that neither Paul Junior nor Paul Nguyen was covered by this release, because they were not MakeOffices employees or agents. Whether the settlement agreement applied to plaintiff's

11

claims was clearly debatable, rendering plaintiff's efforts to exclude that agreement neither

frivolous nor unreasonable. Therefore, plaintiff's discovery position did not warrant an award of

attorneys' fees.

c.   The need to advance considerations of compensation and
     deterrence

Finally, defendants assert that attorneys' fees are necessary under 15 U.S.C. § 1117(a) to

compensate them for being victimized by plaintiff and to deter plaintiff from similar behavior in

the future. Specifically, defendants assert that the lawsuit was brought as retribution against

defendants for Chris Junior's decision to vote Rahbar out as CEO of MakeOffices, and to

pressure defendants into getting Rahbar reinstated into that position. Defendants argue that

Rahbar told Paul Junior that if Paul Junior did not tell his son, Chris Junior, to "vote him back in

as CEO of MakeOffices that 'there would be trouble,'" [Dkt. No. 63-15] ¶ 2, and told Paul

Nguyen that if he did not recommend that his friend, Chris Junior, "vote him back in as CEO that

[Paul Nguyen's] Realtor license would be in jeopardy," [Dkt. No. 63-16] ¶ 2.  Defendants also

point to Rahbar proposing to release defendants from the instant litigation if Chris Junior voted

Rahbar back in as CEO. In sum, Defendants argue that Rahbar's true motivation for bringing the

lawsuit was not to protect AMC against trademark violations.

AMC's litigation conduct does not support the conclusion that Rahbar's sole goal in

bringing this litigation was to ensure his reinstatement as MakeOffices's CEO. As other district

courts have observed, "[t]he 'paradigmatic case' of improper motive justifying an 'exceptional'

case finding is where [a] 'plaintiff with no intention of testing the substance of its theories brings

meritless claims to extract a nuisance value settlement based on the fact that defendants will be

required to expend tens or hundreds of thousands of dollars in discovery." Sleepy's LLC v.

Select Comfort Wholesale Corp., No. 07-cv-4018, 2020 WL 1244930, at *15 (E.D.N.Y. Mar. 16,

2020) (internal citations omitted). This is not such a case. Plaintiff pursued its claims over many months of litigation, presumably at considerable cost to itself, and articulated arguments that the Court found meritorious at the motion to dismiss stage and colorable at the summary judgment stage. See id. (Plaintiff "pursued its claims, including the Lanham Act claim, through multiple dispositive motions and trial. This supports the conclusion that [plaintiff] did not initiate this action for an improper purpose."). Moreover, there is no indication from the record that Rahbar continued throughout the litigation to pressure defendants to assist in his reinstatement as CEO, as might have been expected had the main goal of the litigation been to secure such reinstatement.

Although defendants successfully prevailed at summary judgment, "the American Rule deprives thoroughly successful litigants of attorneys' fees every day." Id. (internal citations omitted). To displace that rule, the prevailing parties in a Lanham Act case must show by a preponderance of the evidence that the case was exceptional. Defendants have not met that burden.

### 2.  Attorneys' fees under Rule 56(h)

Defendants' argument for attorneys' fees under Rule 56(h) based on plaintiff's filing of the second Morales affidavit is also unsuccessful. As an initial matter, the Court remarked after Morales's testimony that "both affidavits were written by lawyers or . . . not written by Mr. Morales himself, so to some degree, both sides put words into his mouth." [Dkt. No. 77] at 19:18-20. Although certain statements in the affidavit presented by plaintiff, such as those relating to Morales' fluency in English, were inconsistent with Morales's statements in the first declaration, these inconsistencies are insufficient to conclude that the affidavit was submitted in bad faith or solely for delay. Although the Court found Morales to be fluent in English, it was not

unreasonable for his affidavit to state otherwise, particularly given that Morales himself testified that English was not his first language and that he believed he was not fluent. Id. at 13:24-14:1. At bottom, Morales appears to have been caught in the middle between two dueling parties and signed both documents to avoid getting into trouble with either side. Neither document perfectly captured Morales's actual position. On this record, it is not clear that AMC submitted Morales's affidavit in bad faith or solely for delay, as would be required to impose attorneys' fees under Rule 56(h).

### III.   CONCLUSION

For the foregoing reasons, defendants' motion for attorneys' fees will be denied by an Order to be issued with this Memorandum Opinion.

Entered this _4_ day of May, 2020.

Alexandria, Virginia

_____/s/_____
Leonie M. Brinkema
United States District Judge